### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF ILLINOIS – EAST ST. LOUIS

| | |
|---|---|
| 1.    **MARGARET J. LOWERY** | |
| **Plaintiffs,** | **Case No: 2025CV22-RAW** |
| v. | **JURY TRIAL REQUESTED** |
| 2.    **STATE OF ILLINOIS,** | |
| 3.    **ILLINOIS ATTORNEY REGISTRATION** | **Title II & V of ADA 42 USC 1983** |
| **& DISCIPLINARY SYSTEM, and;** | |
| 4.    **IN THEIR OFFICIAL CAPACITY:** | |
| **Joy Cunningham, Justice** | |
| **Lea Gutierrez, Administrator,** | |
| **Peter Rotskoff Deputy Administrator** | |
| **Rachel Miller, Administrator** | |
| **Jose Lopez, Commissioner** | |
| **Martha Ferdinand, Commissioner** | |
| **Elizebeth Delhimer, Commissioner** | |
| **Esther Seitz, Commissioner** | |
| **Juan Thomas, Commissioner** | |
| **Ashley N. Shambley, Commissioner,** | |
| **Supreme Court ADA Coordinator,** | |
| 5.    **KWAME RAOUL, Attorney General Illinois** | |
| 6.    **STATE OF OKALHOMA  by and through its** | |
| **Attorney General Gentner Drummond** | |
| **Defendants.** | |

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

COMES NOW Plaintiff, Margaret Jean Lowery, by and through her counsel

of record, Mr. Ronald D. Wilknson and for her Complaint against the above-named

Defendants states as follows:

This action arises under the Constitution and laws of the United States, including Title II and Title V of the Americans with Disabilities Act, 42 U.S.C. §§ 12132, 12203, and 42 U.S.C. § 1983. Plaintiff seeks prospective declaratory and injunctive relief for violations of federally protected rights resulting from a coordinated course of conduct between officials of the States of Illinois and Oklahoma, including their respective Attorneys General and disciplinary authorities.

The acts complained about consist of actions in interstate commerce to deprive Plaintiff of access to the courts and to perpetuate a fraudulent disciplinary record through denial of ADA accommodations, violation of Due Process and the fabrication of evidence, all to obstruct federal oversight.

The Illinois Attorney Registration and Disciplinary Commission ("ARDC") and its Review Board acted without lawful jurisdiction, denied Plaintiff participation through refusal of ADA accommodations, and engaged in religious discrimination through issuance of an unlawful government search warrant or subpoena directed at the St. Louis Holocaust Museum for Lowery's ancestry records.

## I.

## JURISDICTION AND VENUE

1. **Invokes U.S Constitution**. This action arises under the Constitution and laws of the United States, including Title II and Title V of the Americans with Disabilities Act, 42 U.S.C. §§ 12132, 12203, and 42 U.S.C. § 1983.

2. **Jurisdictional Statute**. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because the claims arise under federal law and involve ongoing violations of federally protected rights. Venue is proper in this District under 28 U.S.C. § 1391(b) because all defendants except Oklahoma and Drummond reside and conduct their official functions within the State of Illinois.

3. **Oklahoma's Participation**.  It is alleged since Oklahoma participated in and directed harm in Oklahoma to help Illinois violate rights, then the Calder's Effect Test would apply to Oklahoma.  To the extent this Court has concern over jurisdiction of Oklahoma, Oklahoma also has violated the ADA in this case and Oklahoma also has violated Due Process.

4. **Venue**.  Although venue is proper in the Southern District of Illinois because the challenged state disciplinary system is administered within this jurisdiction, Plaintiff notes that all witnesses, treating physicians, and forensic experts are located in or near Tulsa, Oklahoma. Plaintiff is disabled within the meaning of the Americans with Disabilities Act and travel to Illinois imposes a substantial medical and financial burden upon her. Plaintiff raises this issue solely to preserve her right to seek transfer under 28 U.S.C. § 1404(a) should the Court determine that the interests of justice and accessibility would be better served by conducting further proceedings in the Eastern District of Oklahoma or another appropriate forum.

## II.

## <u>NATURE OF THE ACTION</u>

This action challenges the continuing deprivation of federal rights arising from proceedings before the Illinois Attorney Registration and Disciplinary Commission ("ARDC") and its Boards. <u>Plaintiff does not seek review of any state disciplinary judgment.</u> Plaintiff does not seek admission to or to remain a licensed attorney in Illinois. Plaintiff retired from Illinois and retired to the jurisdiction of her primary bar as planned. If Lowery intended to remain in Illinois she never would have maintained her Oklahoma bar license since 1987.

5. **<u>Nature of Declaratory Judgment</u>**. Plaintiff seeks declaratory and injunctive relief determining (1) whether the ARDC possessed lawful jurisdiction to proceed against her, (2) whether its denial of access and ADA accommodations violated Title II of the ADA, and (3) whether the issuance of a subpoena/search warrant to the St. Louis Holocaust Museum violated constitutional and statutory protections against religious discrimination and unreasonable searches (4) whether the violation of the ADA and Due Process Voided the proceedings as a matter of law.

6. **<u>No Appeal</u>**. Plaintiff does not seek review or reversal of any decision of the Illinois Supreme Court. Rather, this action arises under Title II and Title V of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134, 12203, 1983,

and the Fourteenth Amendment to the United States Constitution. The relief sought is declaratory and prospective, addressing systemic violations of federal law within the Illinois attorney disciplinary process that have denied Plaintiff meaningful access to the courts on the basis of disability, gender, and retaliatory animus.

7.    **ADA Disability Invoked**. Plaintiff is a qualified individual with a disability who has been repeatedly denied accommodation by the Illinois Attorney Registration and Disciplinary Commission, the Review Board, and the Illinois Supreme Court, each time without engaging in the interactive process required by 28 C.F.R. § 35.130(b)(7). Because of those denials, Plaintiff has been physically and procedurally barred from participating in her own disciplinary hearings and appeals. Without accommodation, Plaintiff is unable to appear, testify, or otherwise defend herself, rendering state remedies unavailable and the disciplinary record constitutionally void.

8.    **Illinois Bully Culture**. Plaintiff's experience reflects a deeper institutional failure within the Illinois disciplinary system, a culture that treats a woman's insistence on fairness and dignity as defiance, and her request to be left in peace as misconduct. What began as a request for reasonable accommodation devolved into systemic bullying, exclusion, and retaliation carried out under color of law.

9.  **Original Jurisdiction Review.** This case therefore does not ask the federal court to function as an appellate body, but as the proper forum of original jurisdiction to enforce federal disability rights, due process, and equal protection guarantees where the state courts have refused to do so. The failure to grant ADA accommodation is itself a structural barrier to access, leaving this Court as the only venue capable of remedying ongoing violations of federal law and preventing further irreparable harm.

### III.

### STATEMENT OF FACTS

10. **Lowery Retired from Illinois Bar.** Plaintiff is a retired Illinois attorney. Lowery was an Oklahoma who came to Illinois for a job and when that job concluded to left and went back to Oklahoma as planned.  Lowery retired from the Illinois bar effective June 30, 2023.

11. After her retirement, ARDC Administrator Rachel Miller initiated her own motion proceeding in No. 2023PR00060 where she alleged social-media posts were lies. Plaintiff hired a DOJ Forensic expert who opines the posts were not made by Lowery.

12. **No ARDC Jurisdiction**.  The ARDC filed their complaint without validating jurisdiction.   Lowery answered the Administrator she was not an Illinois lawyer and the proceedings were ultra vires.  Upon raising the affirmative

defense of jurisdictional, Lea Gutierrez was required by Illinois Supreme Court Rule 753(b) to establish that the respondent was an attorney subject to Illinois jurisdiction by filing the required jurisdictional affidavit. Defendant ARDC has refused to file an jurisdictional validation it had jurisdiction. Until a court validates jurisdiction, no substantive ruling can issue as a matter of law.

13.    **No Jurisdictional Finding**. Despite Plaintiff's written objection asserting lack of jurisdiction, the ARDC and its Review Board proceeded without making any jurisdictional finding or issuing a lawful order establishing subject matter jurisdiction.

14.    **ADA Requests.** Plaintiff also repeatedly requested ADA accommodations to participate remotely due to a qualifying medical disability documented by her physician.

15.    **Court ADA Coordinator Denials**.  The ARDC's ADA Coordinator and Review Board denied every single request for ADA accommodation without ever engaging in the interactive process required by 28 C.F.R. § 35.130(b)(7).

16.    **Illinois Supreme Court ADA Request**. On or about February 6, 2024, Lowery requested ADA accommodation with a brief stay so she could go inpatient for testing and treatment.  Commissioner Jose Lopez refused the

ADA request, and he refused it without ever engaging in the interactive process.

17.  Lowery then sought review from the Illinois Supreme Court and the matter was assigned to Justice Joy Cunninham.  Cunninham unilaterally denied Lowery ADA accommodation again without engaging in the interactive process.  More problematic was that Cunningham accepted $40,000 from the Ed and Anne Burke Burham fund three weeks before deciding Lowery's case. The problem is the ARDC complaint alleged conduct of the Burkes making Justice Joy Cunninham's involvement a conflict per Rule 2.11.

18.  **<u>Judicial Disqualification for ADA Violation.</u>** When a tribunal or judicial officer denies a request for accommodation under Title II of the Americans with Disabilities Act without engaging in the required interactive process, the court ceases to act as a neutral adjudicator, and it becomes a participant in the alleged discrimination. Once the tribunal itself is accused of violating the ADA, it acquires a personal and institutional stake in the outcome of the proceeding, creating an appearance of bias that triggers mandatory recusal under Rule 2.11 of the Illinois Code of Judicial Conduct. By denying ADA accommodation, the Illinois courts deprived Ms. Lowery of a proceeding that was impartial which is a requirement of the Fourteenth Amendment.

19.  More importantly, a court cannot lawfully adjudicate its own compliance with the ADA while simultaneously exercising judicial power over the litigant who raised the ADA violation in her complaint; to do so is to act as both party and judge in the same cause, a structural conflict that voids the proceeding ab initio under the principles articulated in *In re Murchison*, 349 U.S. 133 (1955), and *Tumey v. Ohio*, 273 U.S. 510 (1927).

20.  On May 2, 2024, without providing Lowery adequate notice, the Illinois ARDC held a hearing in which they locked Lowery out and then refused to address their lack of jurisdiction.  Lowery had pending before the tribunal an ADA request.  She was unable to attend the hearing because Jose Lopez ordered her banished from remote participation starting April 9, 2024.  ARDC even sent her an email the day before on May 1, 2024 stating she would not be admitted to her own hearing.

21.  **<u>May 2, 2024, Default</u>**. On the morning of May 2, 2024, Commissioner Jose Lopez ordered the Clerk of the Court to call Lowery and order to appear on less than 30 minutes notice.  Lowery was in surgery.

22.  **<u>Board Ordered Link Sent.</u>** The Clerk left a message telling Lowery she was to call in and that the Court would send instructions and if Lowery did not return the call, they would proceed without her.  Illinois then never sent the call in instructions or the link. No proof was filed either.

23.  **No Call in Instructions.** Lowery called ARDC, they refused to give her the call in instructions and they hung up the phone on her refusing to give her access.  ARDC hung up on Lowery three times.

24.  **ASA Evans Involvement.** Lowery called Madison County State's Attorney Paul Evans from Oklahoma.  He called ARDC and they hung up on him too.

25.  **Title V Retaliation.** Lowery's law partner Wilkinson went to the U.S. District Court for the Northern District of Oklahoma to obtain Title II access and ARDC responded by filing a bar complaint against Mr. Wilkinson.

26.  **No Complaint Due Process Hearing.** To date, Lowery has never been afforded a hearing on any issue Illinois raised yet she is facing a report and recommendation for disbarment from a jurisdiction she is not admitted to any longer and for acts she did not commit.  Illinois refuses to validate its fraudulent jurisdiction and evidence because that would subject the state to an ultra vires claim.  So the disabled person is the individual who must suffer to preserve an unconstitutional system.

27.  **Review Board ADA Violations.** On July 5, 2025, Lowery requested ADA accommodation to appear remotely for oral argument.  The request was denied without any interactive process.

28.  **Dozens of Bad Teams Links Sent.** On July 11, 2025, the ARDC began sending Lowery bad teams links for argument, a construct lock out from the

oral argument. Over a dozen bad Teams Links were sent over a two hour window as ARDC personnel threatened Lowery with disbarment until she was so sick she began projectile vomiting from the stress. Still ARDC refused to stop the taunting or stop the proceedings until Lowery left the room to seek medical attention. The ARDC risked Lowery's life because expediency is more important than judicial integrity.

29. **Medical Emergency Arose**. Lowery could not stop vomiting so she texted her physician who tried to enter the Courtroom to provide medical assistance. The ARDC blocked his entry into a public courtroom to render medical assistance to his patient.

30. **ADA Violated by Board**. When Lowery raised the conduct as violative of the ADA, the Board retaliated by claiming Lowery had a "mental health" issue. Then the Board altered the transcript to hide what occurred. Lowery has an endocrine tumor which caused the medical issue. ARDC then falsely claimed and published that Lowery refused a medical evaluation after filing more than a dozen ADA accommodation requests. Then the Board stated Lowery had "mental health issues" with no foundation. The altered the transcript to hide the ADA violation.

31. **Independent Recording**. Lowery was so concerned about the ARDC conduct she independently recorded oral argument. The July 11 oral argument

transcript Lowery received is an altered transcript which does not accurately reflect the argument.

32. **Oral Argument Transcript Void**. The transcript has no jurat and multiple orders were entered by ARDC altering the transcript. Under court rules, no court or board may cite or reference an uncertified transcript. When Lowery stated the transcript was altered and asked for a copy of the back up tape, she was denied access.

33. **DOJ Confirms Taint of Transcripts**. That's when Bruce Andersson, a DOJ Forensic Expert was hired. None of the transcripts in Lowery's two discipline cases were validly certified. All transcripts were altered so that the testimony supported a stance "she lied" and is guilty verdict. It appears and it is alleged the ARDC did the same thing to Judges Rhonda Crawford, Robert Adrian and Ron Duebbert. It appears that in cases where an issue arises that might not result in removal, the transcripts are altered to guarantee the desired result.

34. **No Notice of Hearing.** Ms. Lowery was given less than twenty minutes notice of the hearing and she was notified of it as she was coming out of the operating suite.

35. **Cumulative Effect of Due Process Violations**. The cumulative effect of these actions deprived Plaintiff of due process, equal protection, and access to the courts, rendering all subsequent orders void ab initio.

# IV.

## PROCEDURAL BACKGROUND AND PURPOSE OF PRIOR FILINGS

36.    Plaintiff's filings across multiple jurisdictions were not random or duplicative. They were necessary procedural efforts, while under disability, to identify, isolate, and to document the precise structural defect within Illinois's disciplinary system.

37.    Each proceeding functioned as a stress test of a particular safeguard that should have prevented constitutional injury, jurisdictional review, ADA compliance, or fraud correction,  and each failed in turn.

38.    What those cases revealed, when viewed together, is a consistent pattern: the Illinois disciplinary framework lacks the procedural capacity to self-correct.

39.    The record developed across those actions now provides the factual foundation for this case, which seeks declaratory and prospective relief to remedy the constitutional and statutory deficiencies that those earlier proceedings exposed.

40.    Illinois must have a proper regulatory system which functions under the ADA and without the toxic bullying now inherent in the system.

# IV.

## NOTICE OF ADA ACCOMMODATION REQUIREMENT

Plaintiff is a qualified individual with a disability within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and hereby provides notice that meaningful participation in these proceedings is contingent upon reasonable accommodation. Pursuant to 28 C.F.R. § 35.130(b)(7) and § 35.107, the Court and its officers are required to engage in the interactive process to determine such accommodation. If accommodation is denied or not addressed, Plaintiff will be effectively excluded from participation and unable to appear in person or remotely, resulting in a constructive denial of access in violation of Title II. Plaintiff respectfully requests that the Court treat this pleading as both a complaint and formal request for accommodation to preserve full and equal access to the judicial process.

# V

## CAUSES OF ACTION

### Count I - Declaratory Judgment
### *(28.S.C. §§ 2201–2202; Title II ADA; U.S. Const. amend. XIV)*

41.    Plaintiff seeks a declaration that the system of attorney discipline administered through the Illinois Attorney Registration and Disciplinary Commission ("ARDC") and its Boards, as presently structured and applied, violates the United States Constitution and federal law. Plaintiff does not challenge the concept of professional regulation nor the maintenance of ethical standards

14

within the legal profession. Such standards are indispensable to public confidence in the courts.

42. Rather, Plaintiff challenges the *method* Illinois has chosen to implement that function. The ARDC system, by failing to provide meaningful ADA access, by conducting proceedings without jurisdictional validation, and by employing procedures that permit discriminatory and extrajudicial acts, by agreement among state officials to block constitutional access likely for an illegal reason.  All of the conduct combined is wholly inconsistent with the guarantees of due process, equal protection, and Title II of the Americans with Disabilities Act.

43. Plaintiff seeks a declaratory judgment that this system, in its present form and administration, is unconstitutional.  It is a void system insofar as it denies qualified individuals with equal and effective access to the Illinois Courts and to administrative proceedings in general.

44. During the Illinois ARDC proceedings, Plaintiff submitted more than fifty-five (55) discovery requests. The request sought production of forensic data, jurisdictional affidavits, and metadata verifying the authenticity of the Illinois record. (See Exhibit #17 - Petition to Vacate Due to Fraud & Orders)

45. Each request was denied without hearing or explanation, leaving Plaintiff unable to test the validity of the evidence used against her.

46. Plaintiff repeatedly requested accommodation under Title II of the ADA to appear remotely, to be granted accommodation during court appearances and to receive accessible materials. Illinois via the courts, ARDC and Boards denied requests without engaging in the interactive process required by 28 C.F.R. § 35.130(b)(7).

47. In early 2025 when Lowery was in throes of Post Sepsis Syndrome ARDC did send a hard copy of the paper certified file as an ADA accommodation. Lowery made the request because the electronic record documents had no validation. Neither did the hard copies.

48. On May 2, 2024, Plaintiff was denied all access to a hearing without sufficient notice. In her motion for continuance and ADA accommodation, Lowery renewed her ADA accommodation request. No interactive process occurred on any of the nine denials.

*49.* The Hearing Board denied her accommodation and then told the clerk to notify her they were having a hearing in Illinois. Lowery was in Oklahoma in surgery. *The basis of the denial was that an ARDC rule was superior to the U.S. Constitution and the ADA.*

50. On May 2, 2024, Lowery had her renal stents removed after a post emergency surgery procedure in Oklahoma on April 26, 2024.

51.    The Clerk never sent the Teams link as directed but she did call and leave a message.

52.    When Lowery called ARDC after getting out of surgery, ARDC refused to let her into the courtroom. ARDC refused to send the Teams Link.  ARDC hung up the phone on Lowery three times.

53.    Lowery then contacted Madison County Assistant States Attorney Paul Evans to see if he could reach anyone at ARDC so she could be let her into her hearing to make a record.  Illinois hung up on Mr. Evans too twice and Illinois refused to provide him with the link for access to forward to Lowery. (Exhibit #2 – ASA Evans)

54.    Moreover, Lowery was unable to travel due to surgery or drive as she registered on the Glasgow Coma Scale. (Exhibit #3 – VanSchoyck)

55.    The Board then proceeded with the hearing in Lowery's absence, admitted exhibits, and took testimony after blocking Lowery's participation.

56.    Subsequent Review Board proceedings were conducted on altered or uncertified transcripts that lacked a court-reporter jurat, compounding the deprivation of access and due process. (Exhibit #1 DOJ Forensic Affidavit)

57.    The repeated discovery denials, exclusion from hearings, and reliance on altered records illustrate a systemic failure of the ARDC to provide the

procedural safeguards required by the Fourteenth Amendment and Title II of the ADA.

58.  The disciplinary process exists to preserve the public's trust in the legal profession. Yet a system that excludes the disabled, ignores verified evidence of fraud, and conducts hearings in absentia cannot preserve that trust; it destroys it.

*59.*  The question before this Court is not whether attorney regulation is legitimate; *it is whether the means Illinois has chosen to carry out that function remains faithful to the Constitution that authorizes it.*

60.  A disciplinary body that conducts secret proceedings, denies accommodation to those under medical care, and manipulates the evidentiary record forfeits its moral and constitutional authority to judge others. The integrity of the courts depends upon the appearance and the reality of fairness. When the state court system abandons that duty, it ceases to discipline the profession and instead disciplines the truth.

61.  Plaintiff seeks this declaration not for personal exoneration, but to restore the constitutional boundaries that safeguard every lawyer's and every litigant's right to a fair and accessible tribunal.

62.  The Americans with Disabilities Act was enacted to ensure that no individual is excluded from participation in public life because of disability.

63.    The ARDC's disregard of that mandate, combined with its reliance on falsified evidence and secret orders, represents not mere procedural error but a moral collapse in the administration of justice. No court should tolerate a system that teaches the profession that constitutional rights are optional.

64.    The State of Illinois' refusal to provide reasonable accommodations under the Americans with Disabilities Act constitutes not only a violation of federal law but also a direct infringement of the Illinois Constitution's guarantee of access to the courts. Article I, Section 12 of the Illinois Constitution ensures that every person shall obtain justice freely, completely, and without denial. By denying ADA accommodations to a known disabled party, the Illinois disciplinary authorities and judiciary effectively barred that party from meaningful participation in her own proceedings. This denial of access is antithetical to both constitutional and statutory guarantees of fairness and equality before the law.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment declaring:

a.    That the Illinois Attorney Registration and Disciplinary Commission and its Review Board, as presently structured and administered, operate in violation of Title II of the Americans with Disabilities Act, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and 42 U.S.C. § 1983.

b.    That the ARDC's failure to validate jurisdiction before exercising disciplinary authority renders its proceedings and all derivative orders void ab initio.

c.    That the repeated denial of ADA accommodation without engaging in the interactive process required by 28 C.F.R. § 35.130(b)(7) constitutes intentional discrimination and denial of access to a public program within the meaning of Title II of the ADA.

d.    That the use of falsified, uncertified, or altered transcripts in any attorney-disciplinary matter violates the Due Process Clause and deprives affected participants of a fair hearing.

e.    That the issuance of administrative subpoenas or demands directed to religious or cultural institutions, including the Kaplan Feldman Holocaust Museum, without probable cause or jurisdictional basis, violates the First and Fourth Amendments.

f.    That coordination or joint participation between the Offices of the Attorneys General of Illinois and Oklahoma to defend or perpetuate an unlawful disciplinary record constitutes joint state action under color of law that violates the ADA, the Fourteenth Amendment, and 42 U.S.C. §§ 1983 and 1985(3).

g.    That all disciplinary orders, findings, and recommendations issued in violation of the above-referenced constitutional and statutory provisions are void and of no legal effect.

h.    That the State of Illinois must implement disciplinary procedures that comply with the ADA and the Constitution by providing verified jurisdictional affidavits, certified transcripts, and meaningful access for qualified individuals with disabilities.

i.    That Plaintiff is entitled to such further declaratory and injunctive relief as is necessary to ensure the constitutional and statutory compliance of the Illinois attorney-disciplinary system.

## Count II – Fourth Amendment Violation
### (42.S.C. § 1983 Claim)

**65.**    Lowery realleges and reasserts Count 1 though Count X of the Complaint.

**66.**    On June 27, 2023, the Illinois Supreme Court via the Illinois Attorney Registration and Disciplinary Commission's (ARDC) sent an administrative demand/subpoena on official letterhead compelling the Kaplan Feldman Holocaust Museum to its secret or "Confidential Governmental Investigation" of Margaret Lowery's Jewish heritage. (Exhibit #9)

**67.**    The Illinois Supreme Court demand of Kaplan Feldman Holocaust Museum guest list and sign-in sheet of every person in attendance so Illinois could conduct an inquisition for what purpose, is unknown.

21

68. The Court sent its subpoena to Attorney Frank Wolff, of Bryan Cave et al, which has office in Illinois. Bryan Cave Leighton Paisner LLP, as a multistate law firm with an office in Chicago and attorneys admitted to practice in Illinois, is required to obtain a Certificate of Registration pursuant to Illinois Supreme Court Rule 721.

69. Under RPC Rule 8.1, Mr. Wolff was required by law to respond to the inquiry. A failure to respond would result in every member of his firm to be charged with violating "ethical rules" and it would the firm to ARDC/Supreme Court wrath adversely affecting the firms Illinois practice.

70. The ARDC is the Gestapo of the Illinois Supreme Court and the terror they level to a lawyer means there is no right to object.

71. The requests are not voluntary. Any lawyer on the receiving end of one, must comply per RPC Rule 8.1. Rule 8.1 imposes obligations on lawyers and bar applicants to cooperate with disciplinary authorities, including responding to lawful demands for information, while preserving certain protections for confidential information.

72. The Illinois Supreme Court sought records from the Kaplan Feldman Holocaust Museum about Lowery's attendance at a Safety Seminar on June 13, 2023, in Missouri.

**73.**    The administrative subpoena and letter dated June 27, 2023, constitutes or precipitated an unreasonable search, in violation of Margaret Jean Lowery's First & Fourth Amendment rights, which are actionable under 42 U.S.C. § 1983.

**74.**    The Illinois Supreme Court's agency the ARDC's conducts attorney inquiries to are limited to issues involving professional standards.

**75.**    The Illinois Supreme Court does not require a blood test for admission or retention.

**76.**    This is part of a larger anti Semitism problem of the Court and why restorative justice is required.

**77.**    ARDC has no complaint or allegation that Lowery's conduct at the Holocaust Museum was a problem.    Illinois had no legitimate regulatory basis to subpoena Lowery's Holocaust records and the inquiry was  pretextual, and caused harm to her, satisfying the elements of a §1983 claim.

**78.**    Lowery provided to the ARDC a statement from her physician on May 12, 2023 to satisfy the ADA inquiry and to support her request, any follow up inquiry should have been directed to the physician not a Holocaust Museum . This is important because Miller did not grant the accommodation, she out right denied it without any interactive process and then issued a Holocaust Subpoena converting a Title II access claim into a Title V Retaliation claim.

79.  The ARDC, established under Illinois Supreme Court Rule 751, operates as a state agency with authority to regulate Illinois attorneys conduct not their 1st Amendment associations, religion or other first amendment activities.

80.  Rachel C. Miller, as ARDC Counsel, acted under color of state law when she issued a subpoena demanding information about Lowery's attendance at the meeting. This satisfies the state action requirement for a § 1983 claim. See *West v. Atkins*, 487 U.S. 42, 49 (1988).

81.  The Fourth Amendment protects against unreasonable searches and seizures, including intrusive inquiries by state official into areas where an individual has a reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

82.  The ARDC's request for the sign-in sheet, guest list, the names of everyone in attendance and related records (e.g., sign-in procedures, ticketing details) constitute or led to an unconstitutional search because:

   a.  Third-party records are generally subject to the third-party doctrine, and Lowery had a reasonable expectation of privacy in said records tied to her attendance at a religious meeting about safety and addressing anti-Semitism.

   b.  The ARDC's request for detailed event records, including whether Lowery attended and how she registered, intruded into her associational

and expressive activities, protected under the Fourth and First Amendments. See *NAACP v. Alabama*, 357 U.S. 449, 462 (1958) (recognizing privacy in associational records).

c.     The inquiry's scope, seeking specific details about Lowery's participation, was overly broad and not narrowly tailored to a legitimate regulatory purpose.

d.     The ARDC's request lacked a reasonable basis or probable cause, rendering it an unreasonable search. Lowery notified the ARDC of her retirement on June 30, 2023. The letter was sent three days before Lowery retired, and she sought no CLE credit for Illinois.

83.    Thus, the inquiry into her attendance at the June 13, 2023, seminar could not be justified by a CLE compliance inquiry, as Lowery was retiring before the reporting period of July 1st.  Moreover, since Lowery retired, no basis existed in fact or law for doing it, which means the inquiry was made in bad faith, with malice meeting the exception in the Young Doctrine.

84.    Furthermore, the ARDC's investigation (No. 2023IN01374) appears to stem from baseless or pretextual allegations, given the absence of specific misconduct tied to the seminar.   The only matter pending with ARDC was Lowery's claim of an elevator incident.  How is a 2018 elevator incident by

Andrew Gleeson in any way related to her attendance at a safety meeting of Jews.

85. The request for the guest list, without evidence of a complaint alleging professional misconduct at the event, constitutes a fishing expedition, violating the Fourth Amendment's requirement of reasonableness. See *Maryland v. King*, 569 U.S. 435, 447 (2013)

86. The ARDC's inquiry was a pretext for harassment, as evidenced by its timing and context. Lowery's retirement three days later as planned rendered the investigation irrelevant to her active licensure, suggesting an intent to target her ancestry unfairly. The ARDC's history of pursuing baseless complaints against Lowery, including reliance on unverified or fraudulent evidence, supports the finding of bad faith. See *Chiaverini v. City of Napoleon*, 144 S. Ct. 1513, 1520 (2024) (bad faith government action supports § 1983 claims).

87. The request for the guest list of a "safety seminar" addressing anti-Semitism, without a clear nexus to professional misconduct, further indicates an improper motive, potentially aimed at chilling Lowery's associational rights or tarnishing her reputation. For a Court claiming its dedication to "restorative justice" this is highly disturbing conduct especially since Lowery had relatives murdered in the Holocaust. The fact Lowery's father never publicly discussed the Second World War or the Holocaust, as a decorated veteran when it

involved his deceased wife's family should not be an unusual or suspicious. activity.  Many veterans approach service this and Lowery's mother died in a tragic accident when she was six years old in 1967. It was a different era.

88.  The ARDC's request for the guest list at a Holocaust Museum, for the attendees at a safety meeting in the context of Jews at the Holocaust Museum, is quite unusual in bar regulation.  One wonders what the legitimate basis was to conduct a state sponsored search of the physical and electronic data of the Holocaust Museum.

89.  The ARDC's inquiry could have been used to obtain a search warrant based on false or insufficient evidence, such as misrepresentations about Lowery's actions at the seminar.   This search announcing a "secret governmental investigation of Jews"  without probable cause or based on false statements violates the Fourth Amendment. *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). Any such search, prompted by the ARDC's baseless request, would constitute an actionable violation under § 1983.

90.  The ARDC's unreasonable inquiry and any resulting search resulted in Lowery harm, including emotional distress, reputational damage, and interference with her professional standing. The investigation focuses on a sensitive event addressing anti-Semitism risked stigmatizing Lowery, particularly given her retirement and lack of ongoing CLE obligations. These

harms are cognizable under § 1983. See *Memphis Comm. Sch. Dist. v. Stachura,* 477 U.S. 299, 307 (1986) (compensatory damages available for constitutional violations).

91.   ARDC officials, including Rachel C. Miller, are not entitled to qualified immunity because their actions violated Lowery's clearly established Fourth Amendment right to be free from unreasonable searches. The right to be free from searches lacking probable cause or conducted in bad faith is well-established. See *Groh v. Ramirez*, 540 U.S. 551, 563 (2004). The ARDC's pretextual and baseless inquiry, especially in the context of Lowery's imminent retirement, was objectively unreasonable, precluding immunity. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818

WHEREFORE, premises considered, the ARDC's request for the seminar's guest list, executed under color of state law, constituted or led to an unreasonable search in violation of Lowery's Fourth Amendment rights causing her damages in excess of $75,000. The inquiry's lack of probable cause, pretextual nature, and potential to prompt an unlawful warrant-based search satisfy the elements of a § 1983 claim. Lowery is entitled to compensatory and punitive damages for the resulting harm, as well as injunctive relief to prevent further unconstitutional actions by the ARDC.

## <u>COUNT III – Selective Enforcement, Equal Protection</u>

100.    Plaintiff incorporates all preceding paragraphs.

101.    The disciplinary actions of the Illinois Attorney Registration and Disciplinary Commission and the Illinois Supreme Court demonstrate a pattern of selective and discriminatory enforcement that violates the Fourteenth Amendment and Title II of the Americans with Disabilities Act.

102.    Empirical research confirms that female and minority attorneys are disciplined more harshly than white male attorneys for comparable conduct, and that race and gender bias pervade professional disciplinary systems. [Kennedy, McDonnell & Stephens, "Gender Disparity in Attorney Discipline," 2016**,** demonstrating that women lawyers are more than twice as likely to be disbarred as men for identical infractions; Kang, "Female Attorneys More Likely To Be Disbarred," *Law360* **(**2016)), finding that gender bias persists across disciplinary bodies; Hatamyar & Simmons, "Are Women More Ethical Lawyers? An Empirical Study of Gender and Discipline," 31 Fla. St. U. L. Rev. 785 (2004)), showing statistically significant differences in sanction outcomes by gender. Additional professional studies confirm similar systemic bias across racial lines; ABA Journal, "California Study Finds Racial Disparities in Lawyer Discipline" (2019**)),** reporting that the California State Bar found measurable racial

disparities in probation, disbarment, and resignation rates, and Forbes, "Female Lawyers Face Widespread Gender Bias, According to New Study" (2023), documenting pervasive gender-based obstacles and credibility bias within the legal profession; Kennedy, "Lawyer, Interrupted: Gender Bias in Oral Arguments at the U.S. Supreme Court," *Journal of Law and Courts* (Cambridge Univ. Press 2016), identifying structural judicial bias in the treatment of women advocates during oral argument.]

103.    Then there is the study of all studies which was commissioned by the Illinois Supreme Court. The Red Bee Group bullying and bias study, which the Illinois bar itself commissioned and published, documents the disparity. It shows how the discrimination is causing increased levels of bullying, retaliation and disparately harsh treatment directed at women and lawyers from underrepresented groups in the Illinois legal system.

104.    That Illinois specific study confirms that the discriminatory patterns identified in national research are present in Illinois and were known to Illinois legal authorities and yet when Lowery complained to the Court instead of helping her they retaliated like they have for everyone who ever asks for help. The Court collects $25 from every lawyer so it can paper over the problems instead of addressing the problems.

105.    An example of how disparate the unconstitutional treatment has become, former Speaker **Michael J. Madigan** was indicted on twenty-three federal counts including racketeering conspiracy, bribery, and wire fraud.

106.    Former Alderman **Edward M. Burke**, the spouse of a former Illinois Supreme Court Justice Anne Burke, was convicted on thirteen federal felony counts including racketeering, bribery, and extortion.

107.    Former Coles County Assistant State's Attorney **Brady Allen** was charged in 2023 with more than thirty felonies including bribery, witness harassment, and official misconduct arising from sexual exploitation of criminal defendants.

108.    Two Chicago immigration attorneys were indicted in 2023 and 2024 for immigration-fraud schemes involving falsified job offers, sham marriages, and false submissions to federal authorities. Former

109.    St. Clair County State's Attorney Paul Storment Jr., repeatedly disciplined for dishonesty and mishandling client funds, remained listed as an active member of the bar for months after his death. None of these privileged white males were subjected to emergency or interim suspension by the ARDC while their criminal or disciplinary proceedings were pending.

110.    By contrast, **Margaret Lowery**, a woman with a disability and of Jewish ancestry residing in Tulsa, Oklahoma and long retired from Illinois practice,

was subjected to immediate emergency suspension despite facing no criminal

charges and presenting no risk to the public. **Rhonda Crawford**, an African-

American woman and former judicial law clerk, likewise received emergency

suspension for conduct that involved no public-safety threat.

111.    The disparity in enforcement is unmistakable. When politically connected

white male attorneys charged with racketeering, bribery, extortion, sexual

coercion, or immigration fraud are allowed to remain in good standing while

women and minority attorneys, particularly those who raise ADA or bias

concerns, are subjected to emergency discipline, the inference of arbitrary and

discriminatory enforcement is unavoidable.

112.    The ARDC's conduct constitutes a denial of equal protection under the

Fourteenth Amendment and evidences systemic bias incompatible with Title

II and Title V of the ADA.

113.    Plaintiff seeks declaratory and injunctive relief by declaring that the State of

Illinois, acting through its Supreme Court and the ARDC, has engaged in

selective and discriminatory enforcement and requesting the appointment of

an independent compliance monitor to ensure future adherence to

constitutional and ADA requirements.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment in her favor and against the State of Illinois, acting through its Supreme Court and the Attorney Registration and Disciplinary Commission, and that the Court:

a.      Declare that Defendants' actions constitute selective and discriminatory enforcement in violation of the Equal Protection Clause of the Fourteenth Amendment and Title II and Title V of the Americans with Disabilities Act;

b.      Issue injunctive relief prohibiting Defendants from further enforcement of disciplinary procedures in a manner that discriminates by gender, religion, race, disability, or protected advocacy.

c.      Appoint or direct the appointment of an independent federal compliance monitor to oversee ADA and Equal-Protection compliance within the Illinois Supreme Court and ARDC disciplinary system;

d.      Order Defendants to develop and implement a written compliance plan consistent with federal ADA standards and equal-protection principles;

e.      Award Plaintiff such other and further relief as this Court deems just and proper.

## Count IV – Denial of Due Process and Equal Protection
## (U.S. Const. amend. XIV; 42 U.S.C. § 1983)

114.    The Illinois Supreme Court, acting through the Attorney Registration and Disciplinary Commission and its Review Board, deprived Plaintiff of property

and liberty interests without notice, hearing, or jurisdictional validation, in violation of the Fourteenth Amendment.

115. Illinois Supreme Court Rule 753(b) limits disciplinary jurisdiction to licensed attorneys. At the time of the alleged misconduct, Plaintiff had retired from the Illinois bar and was not engaged in the practice of law within that jurisdiction. No affidavit, order, or certificate established continuing jurisdiction, yet disciplinary proceedings were commenced and maintained as if licensure still existed.

116. The ARDC issued an **interim suspension** against Plaintiff without verified complaint, evidentiary hearing, or judicial finding of jurisdiction. The order was entered ex parte, without notice or opportunity to respond, and was subsequently circulated through interstate bar databases as a valid disciplinary action.

117. That suspension, entered against a non-licensee, is void ab initio. Its publication and reliance by other jurisdictions constitute continuing deprivations of reputation and professional standing within the meaning of *Wisconsin v. Constantineau*, 400 U.S. 433 (1971).

118. The deprivation also contravenes *Mathews v. Eldridge*, 424 U.S. 319 (1976), which requires notice and opportunity to be heard before the State may deprive an individual of a protected interest. No such process was afforded.

119.  The subsequent **pile-on coordination** among disciplinary bodies magnified the deprivation. Illinois transmitted the void suspension to other states and federal courts, prompting reciprocal or derivative actions that compounded the injury and foreclosed meaningful review.

120.  These actions were taken despite verified forensic proof that the evidentiary record on which the suspension rested was fabricated and altered. Officials ignored those findings and continued to enforce the void order, demonstrating deliberate indifference to constitutional requirements.

121.  The selective treatment of Plaintiff, elderly, disabled attorney, contrasts sharply with the leniency shown to similarly situated attorneys within Illinois who received full hearings and opportunities for reinstatement. Such disparate treatment violates the Equal Protection Clause. Lowery's retirement therefore should never have been "contested."

122.  By imposing discipline without jurisdiction, without process, and in coordination with other states based on falsified materials, Defendants created and maintained a disciplinary system operating outside constitutional boundaries. The process, as administered, constitutes structural bias and deprivation of fair tribunal under *Tumey v. Ohio*, 273 U.S. 510 (1927), and *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

123.   The continuing enforcement and publication of the void suspension inflict ongoing stigma and professional harm and deny equal protection of the laws. The constitutional injury persists each day that the suspension remains recorded or relied upon.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a.    Declare that the interim suspension and all related disciplinary actions issued without jurisdiction, notice, or hearing are void ab initio.

b.    Declare that Defendants' failure to provide notice and hearing violated the Due Process Clause of the Fourteenth Amendment.

c.    Declare that the selective and disparate treatment of Plaintiff constituted denial of Equal Protection under the Fourteenth Amendment.

d.    Order Defendants to vacate and expunge all disciplinary records and public postings referencing the interim suspension or subsequent reciprocal actions;

e.    Enjoin Defendants from transmitting, publishing, or relying upon the void orders or their derivatives in any jurisdiction.

f.    Award compensatory and punitive damages for the constitutional deprivations, together with reasonable attorney's fees and costs under 42 U.S.C. § 1988; and

g.    Grant such further declaratory and equitable relief as the Court deems just and proper.

## Count V – Violation of Title II & V of the Americans with Disabilities Act
### Title 42 U.S.C.§§ 12132 and 12203)

124.  The Illinois Supreme Court, acting through the Attorney Registration and Disciplinary Commission and its Review Board, constitutes a public entity within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. §12131.

125.  Plaintiff is a qualified individual with a disability as defined by 42 U.S.C. §12102. Her documented medical condition substantially limits major life activities and requires reasonable accommodation for participation in administrative and judicial proceedings.

126.  During the pendency of disciplinary proceedings, Plaintiff submitted multiple requests for reasonable accommodation, including requests for remote participation, accessible materials, and extended time for review of digital evidence.

127.  The ARDC and Review Board denied each request without engaging in the interactive process required by 28 C.F.R. §35.130(b)(7). Those denials deprived Plaintiff of meaningful participation and access to proceedings for which she was a party in interest.

128.  On May 2, 2024, Plaintiff renewed her ADA request immediately before a scheduled disciplinary hearing. Instead of addressing the request, the Hearing

Board locked Plaintiff out of participation and proceeded in her absence, admitting exhibits and taking testimony.

129. The ARDC and Review Board subsequently circulated the incomplete record and transcript as if Plaintiff had voluntarily defaulted, mischaracterizing her exclusion as abandonment rather than denial of accommodation.

130. In fact, the 2023PR00060 ARDC complaint demonstrates the retaliatory character of Illinois' disciplinary enforcement.

131. To justify continued prosecution of Lowery after she exposed transcript fraud and ADA violations, the ARDC revived factual material more than a decade old, including an alleged "elevator incident" first reported to the agency in 2018 as workplace bullying by others against Plaintiff.

132. Despite having long possessed this information and taken no action at the time, the ARDC later repurposed it from a privileged pleading as a new disciplinary count only after Plaintiff asserted her civil rights and sought federal review of prior misconduct.

133. The selective resurrection of time-barred and previously closed matters illustrates the retaliatory nature of the proceedings and the absence of any legitimate regulatory purpose. Such conduct constitutes reprisal under Title V of the Americans with Disabilities Act, 42 U.S.C. § 12203, and violates the equal-protection and due-process guarantees of the Fourteenth Amendment.

134. Following these events, ARDC officials and Review Board members began describing Plaintiff as suffering from mental instability or unfitness, despite medical documentation establishing a medical basis (endocrine tumor) unrelated to cognitive or psychiatric capacity.

135. These false statements constituted unauthorized medical evaluation and retaliatory stereotyping in violation of Title II & Title V.

136. The ARDC's conduct went beyond mere denial of accommodation and entered the realm of retaliation prohibited by 42 U.S.C. §12203(a). By portraying a physically disabled individual as mentally incompetent for asserting ADA rights, the ARDC engaged in coercion, intimidation, and interference with the exercise of protected rights in violation of §12203(b).

137. The false and stigmatizing portrayal of Plaintiff as a "mental patient" was disseminated to other agencies and jurisdictions to justify the continued enforcement of void disciplinary orders, thereby compounding the discrimination and retaliatory harm.

138. These actions also violated 28 C.F.R. §35.130(h), which prohibits a public entity from using criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination or defeating their access to participation in public programs.

139.  The pattern of denying ADA requests, engaging in retaliatory labeling, and weaponizing medical mischaracterizations demonstrates deliberate indifference to federal law. Defendants acted with knowledge that their conduct would cause harm and persisted despite clear notice of their legal obligations.

140.  The cumulative effect of these actions denied Plaintiff the equal benefit of participation in disciplinary proceedings and chilled the exercise of ADA rights by all similarly situated individuals.

141.  Remedies under Title II and Title V of the Americans with Disabilities Act are limited to equitable and declaratory relief. Plaintiff therefore seeks only prospective injunctive orders and declarations restoring access, enforcing compliance with 42 U.S.C. §§ 12132 and 12203, and awarding reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988. No claim for punitive or compensatory damages is asserted under the ADA.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a.  Declare that Defendants' conduct violated Title II and Title V of the Americans with Disabilities Act;

b.  Declare that Defendants' refusal to engage in the interactive process, denial of accommodation, and retaliatory labeling of Plaintiff as mentally unstable were unlawful acts of discrimination and retaliation;

40

c.     Enjoin   Defendants   from   denying   reasonable   accommodation,   from conducting   unauthorized   medical   evaluations,   and   from   publishing   or circulating any reference portraying Plaintiff as mentally impaired;

d.     Order   Defendants   to   implement   ADA-compliance   protocols   ensuring interactive   accommodation,   accessible   participation,   and   staff   training consistent with federal regulations;

e.     Require correction and retraction of all public or interstate records containing false medical or psychological characterizations;

f.     Award damages as permitted by statute, together with attorney's fees and costs under 42 U.S.C. §12205; and;

g.     Grant such further declaratory and equitable relief as this Court deems just and proper.

### Count VI – Unconstitutional Cost
### -Recovery Regime (Rule 774) and Denial of Due Process
### (U.S. Const. amend. XIV; 42 U.S.C. § 1983)

142.  Plaintiff realleges all preceding paragraphs.

143.  Illinois Supreme Court Rule 774 authorizes the Attorney Registration and Disciplinary   Commission   to   recover   investigation   and   prosecution   costs whenever discipline is imposed while providing no reciprocal right of recovery to a respondent who prevails.

144. The ARDC's disciplinary system is financed primarily through annual registration fees assessed against every licensed Illinois attorney. Those same registration fees fund the Commission's operating budget, including its investigative and prosecutorial functions. Despite this taxpayer and license-funded support, Rule 774 authorizes the ARDC to petition the Illinois Supreme Court for additional reimbursement of those identical costs from individual respondents. The result is a system of double collection that allows the agency to recover the same expenditures twice—first through mandatory registration fees paid by the entire bar, and again through targeted cost assessments against individual respondents.

145. This double-funding arrangement creates a direct financial interest in sustaining disciplinary prosecutions and findings of misconduct. It gives the ARDC and the Illinois Supreme Court's disciplinary apparatus a pecuniary stake in adverse outcomes, undermining neutrality and impartiality required by the Due Process Clause of the Fourteenth Amendment. The structure violates the principle articulated in *Tumey v. Ohio,* 273 U.S. 510 (1927), and *Ward v. Monroeville*, 409 U.S. 57 (1972), which prohibit adjudicatory systems from financing themselves through the penalties they impose.

146. The regime further violates the Equal Protection Clause by arbitrarily distinguishing between state actors who are reimbursed from public funds

and private respondents who are denied any reciprocal recovery or reimbursement when they prevail. The asymmetry discriminates against those who defend disciplinary charges, including disabled respondents whose ADA accommodation requests are denied, and operates as a financial deterrent to the exercise of constitutional and statutory rights.

147. By coupling ADA-denied proceedings with a punitive financial penalty structure that funds future prosecutions, the ARDC system chills the exercise of First Amendment petition rights and perpetuates a self-financing cycle of punishment without judicial neutrality or meaningful oversight.

148. Plaintiff seeks declaratory and injunctive relief declaring Rule 774 unconstitutional as applied, prohibiting its enforcement in any proceeding conducted without ADA compliance or jurisdictional validation, and directing the adoption of reciprocal, neutral, and ADA-compliant cost standards.

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare that Illinois Supreme Court Rule 774 and the ARDC's system of cost collection constitute an unconstitutional double-funding and self-financing regime in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment;

b.      Enjoin Defendants from enforcing or collecting costs under Rule 774 in any

         proceeding lacking jurisdiction, ADA compliance, or full procedural parity;

c.      Direct Defendants to establish reciprocal cost-recovery rights and neutral

         funding mechanisms consistent with constitutional and ADA standards; and

d.      Award Plaintiff attorney's fees and costs pursuant to 42 U.S.C. § 1988.


### Count VII – Unconscionable and Retaliatory Reimbursement Clause (ISBA Mutual Insurance Co.)
### (Title II and V of the ADA, 42 U.S.C. §§ 12132, 12203; 42 U.S.C. § 1983)

149.   Plaintiff realleges all preceding paragraphs.

150.   ISBA Mutual Insurance Company provides professional-liability coverage to
       Illinois attorneys that includes limited defense-cost advances for disciplinary
       matters but requires reimbursement if any finding of misconduct issues, even
       when such finding arises from proceedings conducted without ADA
       compliance or jurisdiction.

151.   The reimbursement clause is procedurally and substantively unconscionable
       and violates public policy because it penalizes insured attorneys for asserting
       ADA rights, contesting fabricated evidence, or prevailing on jurisdictional or
       constitutional grounds.

152. Enforcement or threatened enforcement of the clause constitutes coercion, intimidation, and retaliation prohibited by Title V of the ADA and denies equal and effective access to judicial processes in violation of Title II.

153. Plaintiff seeks declaratory and injunctive relief declaring the reimbursement clause void and unenforceable as applied to proceedings tainted by ADA or due-process violations and prohibiting ISBA Mutual from seeking reimbursement or offset premised on any disciplinary order rendered void ab initio.

WHEREFORE, Plaintiff respectfully requests that this Court:

a.  Declare the system of collection of costs unconstitutional.

b.  Award attorney's fees and costs.

c.

### Count VIII – Fraud on Court, Structural Conflict, & Calder's Effect Directed Conduct

154. Plaintiff realleges and incorporates by reference all preceding paragraphs. This count arises from Defendants deliberate use and dissemination of falsified evidence, the knowing alteration of official transcripts, and the continuation of judicial proceedings under conditions of structural conflict and disability discrimination.

155. Through the Attorney Registration and Disciplinary Commission ("ARDC") and related state actors, Defendants submitted fabricated documents and

uncertified transcripts to multiple tribunals, including those of Illinois, Oklahoma, and federal jurisdiction. DOJ-certified forensic expert Bruce Anderson confirmed that the digital files and transcript metadata were altered and that essential certification data were missing. These acts constitute extrinsic fraud that corrupted the judicial machinery itself and rendered subsequent orders void ab initio under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and *United States v. Throckmorton*, 98 U.S. 61 (1878).

156. Defendants compounded this fraud by denying ADA accommodation, thereby converting the tribunals from neutral adjudicators into participants in the discrimination. Once the adjudicative body became an accused violator of the ADA, it acquired a personal and institutional stake in the outcome, creating a structural conflict prohibited by *In re Murchison*, 349 U.S. 133 (1955), and *Tumey v. Ohio*, 273 U.S. 510 (1927). A proceeding conducted under such conditions is constitutionally void because no impartial tribunal remained to decide the issues before it.

157. Further, communications produced from the Oklahoma Attorney General's office show that its personnel transmitted and endorsed the falsified Illinois materials for use in disciplinary and judicial proceedings. These acts were intentional and expressly aimed at Illinois, where the injury occurred. Under

*Calder v. Jones*, 465 U.S. 783 (1984), this purposeful direction of fraudulent materials into the Illinois forum satisfies the "effects" test for specific jurisdiction and demonstrates coordinated interstate misconduct.

158.  The cumulative effect of these actions deprived Plaintiff of due process, equal protection, and access to the courts, undermining the integrity of the judicial system. Fraud on the court is not merely a private injury but an assault upon the institutional duty of truth. When state officials use fabricated evidence and manipulated records under color of law, the resulting orders are void and must be vacated in their entirety.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a.  declare that Defendants' conduct constitutes fraud on the court and renders all affected orders void ab initio.

b.  enter an injunction prohibiting further use or publication of the falsified records;

c.  refer the matter for independent forensic and judicial review; and

d.  grant such further equitable and declaratory relief as justice requires.

### Count IX – Structural Conflict and Interstate Collusion
### (U.S. Const. amend. XIV; Supremacy Clause; 42 U.S.C. § 1983)

154.  The Illinois Supreme Court, acting through its disciplinary arm, and the Oklahoma Attorney General's Office engaged in coordinated conduct that

destroyed structural neutrality and violated the Due Process Clause of the Fourteenth Amendment and the Supremacy Clause of the United States Constitution.

155. Records produced under **Oklahoma Open Records Act Request 25 ORA 261**, certified by Deputy General Counsel Traci N. W. Ballard on November 4, 2025, reveal that Oklahoma Attorney General Gentner Drummond authorized his office to "help our sister state Illinois" in federal litigation concerning Plaintiff. The correspondence between **Amie Ely**, First Assistant Attorney General of Oklahoma, and **Brent Stratton**, Chief Deputy Attorney General of Illinois, confirms direct inter-state coordination.

156. At the time of this coordination, the Oklahoma Attorney General's Office represented the **Oklahoma Bar Association** in related disciplinary litigation. The Oklahoma Supreme Court supervises the OBA and receives legal representation from the same Attorney General. By assisting Illinois in defending fraudulent disciplinary proceedings against Plaintiff, the Oklahoma executive branch placed itself in an adversarial position against an Oklahoma citizen while simultaneously advising the tribunal responsible for adjudicating reciprocal matters.

157. This dual representation and cross-state assistance created an institutional conflict of interest that violated the constitutional requirement of a neutral

forum. The same officers who owe impartiality to Oklahoma citizens acted to advance the interests of another sovereign against one of their own, converting state legal machinery into an instrument of interstate retaliation.

158. The coordination also interfered with the supremacy of federal law by enabling Illinois officials to evade scrutiny of ADA and due-process violations through the assistance of another state's executive branch. Such interference constitutes action under color of state law depriving Plaintiff of rights secured by the Constitution within the meaning of 42 U.S.C. § 1983.

159. The conflict is structural and ongoing. As long as the Oklahoma Attorney General's Office continues to represent the OBA while defending or assisting Illinois in proceedings derived from the same fraudulent record, no Oklahoma forum can offer impartial adjudication. The combination of these roles violates the principles articulated in *Tumey v. Ohio*, 273 U.S. 510 (1927), and *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

160. Plaintiff's constitutional injuries stem directly from this unlawful interstate coordination, which weaponized governmental authority to perpetuate fraud and to deny a disabled attorney a neutral forum.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

a.    Declare that the coordination between the Illinois Attorney General's Office and the Oklahoma Attorney General's Office constitutes an unconstitutional structural conflict and denial of due process;

b.    Declare that participation by Oklahoma executive officers in matters arising from the fraudulent Illinois record violates the Supremacy Clause and 42 U.S.C. § 1983;

c.    Enjoin Defendants and any cooperating state officials from further joint representation, consultation, or participation in litigation involving the falsified Illinois disciplinary record;

d.    Order both states to produce a complete record of all communications, authorizations, and agreements concerning such coordination;

e.    Refer the matter for independent investigation by the United States Department of Justice Civil Rights Division.

f.    Award compensatory and punitive damages for the deprivation of constitutional rights, together with attorney's fees and costs under 42 U.S.C. § 1988; and,

g.    Grant such further declaratory and equitable relief as this Court deems necessary to restore structural neutrality and constitutional compliance.

## **Count X – Retaliation, Defamation, and Abuse of Process**

161.   Plaintiff incorporates the preceding paragraphs.

162. Defendants, acting outside any judicial or adjudicative function, used disciplinary authority and state process for personal and retaliatory purposes.

163. The issuance of the Kaplan Feldman Holocaust Museum subpoena, the circulation of false statements regarding Plaintiff's mental health and professional integrity, and the coordination of defamatory communications were undertaken to punish Plaintiff for asserting disability rights and reporting fraud.

164. These acts were motivated by animus and undertaken beyond the scope of any lawful proceeding.

165. The conduct caused substantial economic and reputational injury and constitutes intentional tortious conduct and retaliation under color of law.

**WHEREFORE**, Plaintiff requests judgment against the individual defendants, jointly and severally, for compensatory damages, punitive damages, and such further relief as the Court deems just.

## Count XI - Interstate Agreement Between the
## Illinois & Oklahoma Attorneys General (42 USC §1983, 1985(3))

Upon information and belief, the Attorney General of the State of Illinois and the Attorney General of the State of Oklahoma, acting in their official capacities and through their respective offices, jointly engaged in a coordinated course of conduct intended to obstruct Plaintiff's exercise of rights secured by the Constitution and laws of the United States. The two offices communicated and

cooperated concerning disciplinary and reciprocal proceedings directed at Plaintiff, despite clear notice that the underlying Illinois record was falsified and that Plaintiff had been denied participation through refusal of ADA accommodations. By their concerted actions, each Attorney General lent the authority of his state to the other for the purpose of enforcing a fraudulent record and preventing federal review of ADA and due-process violations. Such joint conduct constitutes action under color of law within the meaning of 42 U.S.C. § 1983 and an unlawful conspiracy within the meaning of 42 U.S.C. § 1985(3).

## PROCEDURAL HISTORY OF LITIGATION

The procedural history of this case will undoubtedly be raised by Defendants to argue that the problem lies with Plaintiff rather than with the unconstitutional system that produced this controversy. Plaintiff repeatedly petitioned the Illinois Supreme Court to address the Americans with Disabilities Act violations, the record fraud, and the professional bullying occurring within its disciplinary apparatus. The Court's only response was to issue perfunctory "robo-pen" orders, unsigned and unreasoned, which denied all relief without analysis or acknowledgment of the underlying ADA or due-process violations.

This case will likely come before a judge whom Plaintiff knows from her prior practice in Southern Illinois. The issue of Plaintiff's veracity is not in question. The

courthouse assault that precipitated the events underlying this matter was witnessed by multiple individuals. What distinguishes this case from nearly every other disciplinary proceeding is that, beginning in October 2018, Plaintiff repeatedly asked the Court to address the misconduct and to allow her to be left in peace.

The social-media posts and online history attributed to Plaintiff were never her accounts or publications. They were the fabricated or altered posts by Illinois officials to justify the initiation of disciplinary charges. The jurisdiction and the charges themselves are fraudulent, and that is why this case has never been one of "bar regulation" in the constitutional sense. Federal jurisdiction is proper because the matter involves fraud, due-process violations, and ADA discrimination carried out under color of state law.

Plaintiff did not attack the court, nor did she burn bridges upon retirement from practice. What makes this case extraordinary is that the record of Illinois's conduct exists only because of Plaintiff's persistence. The Illinois disciplinary proceedings were conducted in secrecy, resembling "Star Chamber" proceedings in which no hearing has ever been held and no evidence was lawfully admitted.

Plaintiff has pursued related proceedings in the Northern District of Oklahoma, the Western District of Texas, the Eastern District of Oklahoma, and now the Southern District of Illinois. Each action arises from the same nucleus of

operative fact: the use of falsified evidence, transcript manipulation, and the systemic denial of ADA access within the Illinois attorney disciplinary system.

The first related action was filed in the Northern District of Oklahoma under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, asserting denial of meaningful access to the courts. That case was voluntarily dismissed after Plaintiff suffered organ failure and was medically incapacitated from continuing the litigation.

The second action was filed in the Western District of Texas to compel discovery from X Corp regarding electronic proof of the falsified evidence and altered transcripts. The purpose of that proceeding was to obtain metadata and digital trace evidence demonstrating fabrication of the ARDC record. The case was dismissed prior to discovery, leaving the fraud issue unresolved. That is in large part why Bruce Anderson was hired, it was expected that Judge White would have the sense to Order discovery of the

The third action was filed in the Eastern District of Oklahoma under Title II and Title V of the Americans with Disabilities Act, 42 U.S.C. §§ 12132, 12203, seeking access to the courts and protection against retaliation for asserting disability rights. That case was dismissed on jurisdictional grounds for failure to satisfy the *Calder v. Jones*, 465 U.S. 783 (1984), "effects test." The matter is now on appeal and was accepted for review on the issue of whether the Eastern District of

Oklahoma violated the Title II access provisions of the ADA as recognized in *Reed v. Illinois*.

In the Eastern District of Oklahoma, Plaintiff filed a motion under Rule 60(b) of the Federal Rules of Civil Procedure seeking relief from judgment on the grounds of fraud upon the court, lack of jurisdiction, and newly discovered evidence. The motion detailed verified proof that the record relied upon by the district court contained falsified transcripts and altered exhibits originating from the Illinois disciplinary proceedings. The court declined to adjudicate the motion, leaving the constitutional questions and ADA violations unresolved. This sequence demonstrates Plaintiff's good-faith effort to exhaust all procedural remedies and confirms that no final adjudication on the merits occurred.

Because Illinois continues to disregard federal law and to rely upon falsified disciplinary records, Plaintiff has been left without a forum in which to obtain lawful redress. In consequence, Plaintiff refiled this action in the Southern District of Illinois, the forum that possesses personal jurisdiction over the Illinois defendants and where the underlying constitutional violations originated.

This action is not an appeal of bar regulation, nor could it be, as Plaintiff was a retired attorney at all relevant times and therefore outside the jurisdiction of the Illinois Attorney Registration and Disciplinary Commission. The record instead

demonstrates lawfare and interstate harassment under color of state authority, undertaken for improper and likely illicit purposes.

These filings, viewed collectively, demonstrate the absence of bad faith and the consistent good faith of a disabled attorney seeking judicial review of fraudulent state action. Each case was filed openly, supported by authenticated exhibits, and directed toward stopping the ongoing use of falsified records and the continuing violation of federal disability law.

The procedural sequence itself confirms that Plaintiff acted out of necessity and legal compulsion to restore constitutional compliance and to obtain the scrutiny of a learned and impartial court. Plaintiff's actions evidence professional duty and moral obligation, not abuse of process. The only demonstrated misconduct in this record originates from the Illinois disciplinary authorities whose conduct necessitated federal intervention.

Plaintiff fully expects Defendants to invoke disciplinary autonomy and federal abstention to shield these proceedings from the necessary federal scrutiny required of all constitutional claims. Illinois will likely claim that its authority rests upon a bar license that does not exist, and which Plaintiff has never sought to retain, demonstrating that these actions constitute persecution rather than regulation. The State will then rely upon fraudulent evidence which does not match the complaint,

and which appears to be of solely their creation to justify targeting Plaintiff across state lines for an unlawful purpose.

Defendants will then undoubtedly attempt to assert autonomy over this federal proceeding and to argue that the underlying disciplinary actions were never void from inception, even though controlling law holds otherwise. Under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and *United States v. Throckmorton*, 98 U.S. 61 (1878), the proceedings are void *ab initio;* and they are equally void *ab initio* for their violations of the Americans with Disabilities Act. *Tennessee v. Lane*, 541 U.S. 509 (2004)

Defendants will likely deny those violations while offering no explanation for why they wrote that a woman in an operating room suite "did not look sick enough to grant a continuance," or why Illinois issued a Holocaust-related subpoena across state lines into Missouri and then claimed it was part of "bar regulation". These actions and their excuses confirm the central premise of this case: the ARDC proceedings are void *ab initio,* the system is structurally unconstitutional, and it must be immediately declared to prevent further harm to Lowery and others similarly situated in Illinois and Oklahoma.

## **PRAYER FOR RELIEF**

For the foregoing reasons, Plaintiff respectfully requests this Court:

A.    Enter declaratory judgment that the disciplinary system administered through the Illinois Attorney Registration and Disciplinary Commission and its Review Board, as applied, violates the United States Constitution and Title II of the Americans with Disabilities Act;

B.    Issue injunctive relief enjoining Defendants from further enforcement of any disciplinary orders or actions arising from proceedings conducted without jurisdiction, without ADA compliance, or based on falsified or altered records;

C.    Order all state entities and officials to comply with the accessibility mandates of Title II and to restore Plaintiff's full and equal access to judicial and disciplinary processes;

D.    Declare void ab initio any orders or sanctions entered in violation of due process or ADA requirements;

E.    Award Plaintiff equitable relief including expungement of void orders, reinstatement of professional standing, and restoration of privileges and benefits unlawfully withheld;

F.    Award Plaintiff attorney's fees and costs pursuant to 42 U.S.C. § 1988;

G.    Preserve Plaintiff's right to pursue restitution, reimbursement, or damages against individual actors in their personal capacities once the constitutional violations and frauds described herein are adjudicated; and

H.    Grant such further and additional relief as this Court deems just and proper in

the interests of justice.

Respectfully submitted,

*Ronald D. Wilkinson*
_____
9726 East 42nd Street
Suite 140
Tulsa, OK 74146
(918) 361-9652
ronw@lowerywilkinsonlowery.com
rdavidwilkinson@msn.com

## **Certification Regarding Use of Artificial Intelligence**

Counsel certifies that this pleading was not drafted by artificial intelligence. Certain organizational or analytical tools were used to assist in reviewing, organizing and validating argument structure, but all text, legal reasoning, and citations were prepared, written, and verified by counsel personally. The accuracy and compliance with the Federal Rules of Appellate Procedure and the local rules of this Court was personally undertaken by counsel prior to filing.

/s/Ronald D. Wilkinson

## **CERTIFICATE OF SERVICE**

The foregoing pleading was emailed on the same day as presentation to the Clerk to counsel of record at their official addresses.

/s//Ronald D. Wilkinson